UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| KEANDRE ARNOLD, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 1:18-cv-01779-JRS-DLP |
| ELLEN KERIS Doctor, *et al.* | ) | |
| SEXTON Lt., | ) | |
| DAVIS Major, | ) | |
| ERIC LOWE, | ) | |
| KRISTINA STEVENS MHP, | ) | |
| JACQUELINE BLACK MHP, | ) | |
| CRAIG CANNIFF MHP, | ) | |
| KRISTEN DAUSS Dr., | ) | |
| UTM HUBBLER, | ) | |
| Defendants. | ) | |

**Order Denying Motions Related to the Plaintiff's Request for Preliminary Injunction**

Presently pending before the Court are a number of plaintiff Keandre Arnold's motions for preliminary injunction and for a hearing for the pending motions. Dkts. 17, 44, 47, 48, 56, and 57. For reference, the claims that are proceeding in this action are that:

(1) Dr. Keris, Ms. Stevens, Ms. Black, Mr. Canniff, Dr. Daws, Lt. Sexton, Major Davis, Mr. Lowe, and Mr. Hubbler violated Mr. Arnold's due process rights by taking his personal property, restraining him in a bed on June 9, 2018, and issuing sanctions including the denial of a mattress for 90 days with no process for appeal;

(2) Dr. Keris, Ms. Stevens, Ms. Black, Mr. Canniff, Dr. Daws, Lt. Sexton, Major Davis, Mr. Lowe, and Mr. Hubbler violated Mr. Arnold's right to equal protection because they allegedly denied him the same privileges, specifically religious literature, access to his medical records, and adequate recreation, that white and non-Muslim inmates received; and

(3) Dr. Keris, Ms. Stevens, Ms. Black, Mr. Canniff, Dr. Daws, Lt. Sexton, Major Davis, Mr. Lowe, and Mr. Hubbler placed Mr. Arnold, a seriously mentally ill offender, in a segregation-like setting in violation of the Eighth Amendment.

Dkt. 12.

### I. Procedural Background of the Preliminary Injunction Motions

Mr. Arnold's September 4, 2018, motion for preliminary injunction/temporary restraining order requests that the Court issue an order requiring: (1) the transfer of Mr. Arnold from New Castle Correctional Facility to Indiana State Prison; (2) the return of his personal property; (3) weekly therapy sessions with Dr. Keris; (4) the transfer of Mr. Arnold to another housing range; (5) the provision of recreation time; and (6) access to the law library and J-Pay/mailing system. Dkt. 17. Mr. Arnold specifically requests that he remain under the sole care of Dr. Keris. Dkt. 17-1 at 2.

In response, the medical defendants (Craig Canniff, Jacqueline Black, Kristina Stevens, Ellen Keris, and Kristen Dauss) explain that Mr. Arnold has a "long history of mental and behavioral instability which over time has unfortunately manifested into a number of behavioral outbursts, disciplinary infractions and suicide attempts." Dkt. 39 at 3. As a result, Mr. Arnold was transferred and admitted to the New Castle Psychiatric Unit. *Id.* at 4. Since a serious suicide attempt in November 2016, Mr. Arnold "has been closely monitored and all considerations for available property, housing assignments and phase levels must be discussed through [his] treatment team." *Id.*

The medical defendants explain that a transfer to a new facility, for broader access to his personal property, or a transfer to a different cell house is not indicated currently and may only be made as a result of careful consideration and discussion from his psychiatric team. *Id.* at 4. They also explain that Mr. Arnold has consistent access to group therapy twice a week as well as individualized therapy every other week and mental health medication through a licensed psychiatrist, but that Mr. Arnold "does not have a strong track record for participation and engagement with group and individual therapy, as [he] is known to skip group sessions or not

engage in discussions when present." *Id.* at 4-5. As to recreation time, the medical defendants note that he is offered daily recreation. *Id.* at 5-6. The medical defendants explain that the security staff provide Mr. Arnold with access to the law library and J-Pay system in accordance with security directives. *Id.* at 6. Dr. Keris submitted an affidavit that "[a]fter [Mr. Arnold] has exhibited the ability to avoid self-injurious and belligerent behavior, as well as stable mood and behavior, the treatment team will consider potential transfers and other accommodations that can be offered at New Castle." *Id.* at 6. Dr. Keris explained that Mr. Arnold is currently at phase level 3C, which means he is allowed to be uncuffed and have the highest level of access to property that the treatment team can offer at New Castle. Dkt. 39-1 at 2. She further explains that his phase level is reviewed weekly by his treatment team, and that his phase has been increased twice over the previous three months, permitting him additional privileges and access to additional property. *Id*. at 3.

The GEO defendants (Lt. Sexton, Major Davis, Mr. Huber, and Mr. Eric Lowe) assert in their response that Mr. Arnold's access to personal property has increased due to his progression through a certain behavior phase in the mental health unit, that the GEO defendants have no ability to provide medical or mental health care to Mr. Arnold, and that Mr. Arnold has been permitted the use of J-Pay, the law library, and mailing services, subject to scheduling and staff issues. Dkt. 43.

On October 19, 2018, Mr. Arnold filed a second motion for preliminary injunction requesting that Dr. Keris be prohibited from exercising her license as a doctor, and that he be re-evaluated by different mental health staff. Dkt. 44.

On October 24, 2018, Mr. Arnold filed a "motion to intervene/emergency hearing for pending injunction/TRO/Show cause," asserting that he is required to be in restraints and that

medical/mental health treatment is being forced upon him. Dkt. 47. He also asserts that the defendants have falsified documents, although he does not identify any documents that are allegedly falsified, and that another inmate has attacked him. *Id.* On the same day, Mr. Arnold filed a "motion to set hearing on preliminary injunction & to[] show cause/motion for discovery." Dkt. 48. Mr. Arnold again states that the defendants' response to his motion for preliminary injunction is false and provides false testimony. He requests a hearing on the motion. He also asserts that the defendants have failed to produce documents they have deemed to be privileged.

On November 8, 2018, Mr. Arnold filed a "motion ordering defendants to show cause for TRO/injunction," requesting that the Court order the defendants to produce "conduct reports" or other proof documenting his mental health issues. Dkt. 56. On November 16, 2018, Mr. Arnold file a "motion order defendants to show cause and produce," requesting that the Court order the defendants to produce documents relevant to the injunction. Dkt. 57.

The defendants did not provide a response to any of Mr. Arnold's subsequent filings, and except for a response to the filing of November 16, 2018, the time to do so has passed.

## II. Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "To obtain a preliminary injunction, a party must establish [1] that it is likely to succeed on the merits, [2] that it is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in its favor, and [4] that issuing an injunction is in the public interest." *Grace Schools v. Burwell*, 801 F.3d 788, 795 (7th Cir. 2015); *see Winter*, 555 U.S. at 20. "The court weighs the balance of potential harms on a 'sliding scale' against the

movant's likelihood of success: the more likely he is to win, the less the balance of harms must weigh in his favor; the less likely he is to win, the more it must weigh in his favor." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015). "The sliding scale approach is not mathematical in nature, rather it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Stuller, Inc. v. Steak N Shake Enterprises, Inc.*, 695 F.3d 676, 678 (7th Cir. 2012) (citation and internal quotation marks omitted). "Stated another way, the district court 'sit[s] as would a chancellor in equity' and weighs all the factors, 'seeking at all times to minimize the costs of being mistaken.'" *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992)).

Because Mr. Arnold is a prisoner confined at New Castle, the Prison Litigation Reform Act (PLRA) "circumscribes the scope of the court's authority to enter an injunction" in this case. *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). "Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C.A. § 3626(a)(2). "This section of the PLRA enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: '[P]rison officials have broad administrative and discretionary authority over the institutions they manage.'" *Westefer*, 682 F.3d at 683 (quoting *Hewitt v. Helms,* 459 U.S. 460, 467 (1983)).

Additionally, the Seventh Circuit has described the type of injunction Mr. Arnold seeks, where an injunction would require an affirmative act by the defendants, as a mandatory preliminary injunction. *Graham v. Med. Mut. of Ohio,* 130 F.3d 293, 295 (7th Cir.1997). Mandatory injunctions are "cautiously viewed and sparingly issued," because they require the court to

command a defendant to take a particular action. *Id.* (citing *Jordan v. Wolke,* 593 F.2d 772, 774 (7th Cir.1978)).

### III. Discussion

Mr. Arnold's requests in his four motions for preliminary injunction have been grouped into five categories: (1) transfer; (2) day-to-day prison matters; (3) mental health treatment; (4) failure to protect claim; and (5) discovery requests. Each is discussed separately below.

#### A. Transfer to Indiana State Prison or Another Housing Range

Mr. Arnold requests that he be transferred from New Castle to Indiana State Prison because he alleges he received better mental health treatment when he was incarcerated at Indiana State Prison. Dkt. 17-1 at 1. He also requests that he be transferred to a different housing range because of "trauma related incidents that happened in the past," but does not address the elements for obtaining a preliminary injunction as to this request. Dkt. 17 at 1. Mr. Arnold does not have a right to be placed in a particular prison or housing range. *See, e.g., DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) ("[P]risoners possess neither liberty nor property in their classifications and prison assignments. States may move their charges to any prison in the system."); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) (the Constitution does not guarantee placement in a particular prison). Mr. Arnold's vague allegations of "better" treatment at a different facility or housing range are insufficient here. Because there is no scenario whereby the Court, in entering judgment following a resolution of the merits of Mr. Arnold's complaint, would include in that judgment a provision mandating that the defendants transfer him to Indiana State Prison or a housing range, the Court may not grant Mr. Arnold the transfer he seeks.

### B. Day-to-Day Prison Matters: Return of Personal Property, Provision of Recreation Time, and Access to the Law Library and the J-Pay/Mail

Mr. Arnold requests the return of his personal property, the provision of additional recreation time, and access to the law library and the J-Pay/mailing system. Dkt. 17. Mr. Arnold fails to explain in his motions, though, how he is likely to succeed on the merits of obtaining this relief in this case or how he is likely to suffer irreparable harm in the absence of preliminary relief.

Prison administrators "must be accorded wide-ranging deference in the … execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Pardo v. Hosier*, 946 F.2d 1278, 1280-81 (7th Cir. 1991) (internal quotations omitted). It is still not "for the limited competence of federal judges to micromanage prisons." *Bruscino v. Carlson*, 854 F.2d 162, 165 (7th Cir. 1988). "Federal judges must always be circumspect in imposing their ideas about civilized and effective prison administration on state prison officials. … [F]ederal judges know little about the management of prisons; managerial judgments generally are the province of other branches of government than the judicial; and it is unseemly for federal courts to tell a state ... how to run its prison system." *Scarver v. Litscher,* 434 F.3d 972, 976–77 (7th Cir. 2006) (quotation marks omitted).

Here, the defendants have submitted affidavits explaining that: (1) Mr. Arnold's access to personal property is dependent on his phase level, which is evaluated based on his mental health on a weekly basis, dkt. 39-1 at 2; (2) Mr. Arnold is offered daily recreation time, dkt. 39-1 at 3; and (3) Mr. Arnold has access to the law library and J-Pay/mail system, subject to staffing and scheduling, dkt. 39-1 at 4, dkt. 43-1 at 2. Mr. Arnold did not address the defendants' responses in his subsequent filings or dispute their claims. Accordingly, because Mr. Arnold fails to show he is likely to suffer irreparable harm in the absence of preliminary relief, Mr. Arnold's request for a preliminary injunction related to day-to-day prison matters is denied.

### C. Mental Health Treatment: Therapy Sessions with Dr. Keris / Prohibit Dr. Keris from Practicing, and Evaluation by a Different Mental Health Staff

Mr. Arnold first requests that he receive weekly therapy sessions with Dr. Keris, dkt. 17, and that he remain under the sole care of Dr. Keris, dkt. 17-1 at 2. However, he later requests that Dr. Keris be prohibited from exercising her medical license, dkt. 44, and that he be evaluated by a different mental health staff, dkt. 44, and asserts that mental health treatment is being "forced" upon him, dkt. 47.

The Court is unable to entertain motions for preliminary injunctions that have directly conflicting requests, *e.g.* (1) treatment solely from Dr. Keris and prohibiting Dr. Keris from practicing medicine, and (2) requesting treatment but then asserting that treatment is being "forced" upon him. Moreover, inmates are "not entitled to demand specific care;" rather, they are "entitled to reasonable measures to meet a substantial risk of serious harm." *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011). "A medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.* (internal citation omitted).

Dr. Keris has submitted an affidavit documenting her analysis of Mr. Arnold's mental health. Dkt. 39-1. Dr. Keris explains that Mr. Arnold has consistent access to group therapy twice a week as well as individualized therapy every other week and mental health medication through a licensed psychiatrist, but that Mr. Arnold "does not have a strong track record for participation and engagement with group and individual therapy, as [he] is known to skip group sessions or not engage in discussions when present." *Id.* at 2. Mr. Arnold was seen by a psychiatrist on September

6, 2018, in which his prescription of Prozac was increased, and a prescription of Remeron was continued. *Id.* at 4. However, he was placed on a temporary "mental health" placement given his report of increased stress and concerns that this stress would lead to suicidal ideations. *Id.* She explains that "[a]fter [Mr. Arnold] has exhibited the ability to avoid self-injurious and belligerent behavior, as well as stable mood and behavior, the treatment team will consider potential transfers and other accommodations that can be offered at New Castle." *Id.* at 4-5.

In short, it appears that Mr. Arnold is being provided appropriate mental health treatment at this time, and Mr. Arnold is unable to show either that he is likely to prevail in proving his entitlement to different treatment or that he is likely to suffer irreparable harm if he is not provided different treatment immediately. Mr. Arnold is "not entitled to demand specific care," *Arnett*, 658 F.3d at 754, simply because he disagrees with the assessment of Dr. Keris and the New Castle mental health department.

### D. Failure to Protect from Attack Claim

Mr. Arnold alleges that certain of the defendants have "allowed" another inmate to attack him and asks the Court to intervene. Dkt. 47. Mr. Arnold cannot obtain the preliminary relief he seeks in this action. *See Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010) (A court may grant a motion for injunctive relief only if there is a relationship between the injury claimed in the motion and the conduct alleged in the complaint.); *Ball v. Famiglio,* 396 Fed. Appx. 836, 837 (3d Cir. 2010) (per curiam) (same). If Mr. Arnold has been the subject of a specific incident where prison officials failed to protect him, he may take appropriate steps, such as by filing a separate lawsuit, to bring claims against the perpetrators based on those incidents. But the Court cannot address those issues in this case, and his request for a preliminary injunction as it relates to a failure to protect him is denied.

In the meantime, the Court need not order the defendants or any other party to refrain from retaliating against Mr. Arnold, such as by permitting another inmate to attack him, as such actions are already unlawful. Inmates have a constitutionally protected right to litigate concerns about their conditions of imprisonment. *See Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010). Moreover, in the United States, intimidating and retaliating against litigants and witnesses are criminal offenses. *See* 18 U.S.C. §§ 1512, 1513.

### E. Discovery Requests: Production of "Privileged" Documents, Conduct Reports, and Mental Health Documents

Mr. Arnold alleges that the defendants have failed to produce certain documents that the defendants have deemed to be privileged. Dkt. 48. He requests that the Court order the defendants to "send the requested documents because those document[s] support the whole case and the preliminary injunction." *Id.* Mr. Arnold also requests that the Court order the defendants to produce "conduct reports" or other proof documenting his mental health issues. Dkt. 56, Dkt. 57.

Mr. Arnold's discovery requests are inappropriate in the context of a motion for a preliminary injunction. Mr. Arnold must first issue discovery requests to the defendants' counsel. Written discovery to the defendants includes requests for the production of documents (Fed. R. Civ. P. 34), interrogatories (written questions) (Fed. R. Civ. P. 33), and requests for admission (Fed. R. Civ. P. 36). In general, the Federal Rules give 30 days for a party to respond to discovery requests. Discovery requests and responses are not filed with the Court, unless in support of or in opposition to a motion, or as otherwise directed by the Court. To the extent Mr. Arnold has a discovery dispute with the defendants, he must first confer with defendants' counsel in an effort to obtain the discovery information without court action, pursuant to Rule 37 of the *Federal Rules of Civil Procedure*. Discovery disputes should be worked out between the parties, and the Court should be involved only as a last resort. If Mr. Arnold sends a letter to counsel and the parties

cannot resolve any discovery issues, then Mr. Arnold may file a motion to compel with this Court. "Any motion raising a discovery dispute must contain a statement setting forth the efforts taken to resolve the dispute, including the date, time, and place of any discovery conference and the names of all participating parties. The court may deny any motion raising a discovery dispute that does not contain such a statement." S.D. Ind. Local Rule 37-1(b).

Here, Mr. Arnold has failed to certify that he has in good faith conferred or attempted to confer with defendants' counsel to request the relevant documents. His discovery requests are therefore denied without prejudice.

## IV. Conclusion

Mr. Arnold's motions for preliminary injunction, dkts. [17] and [44], are **denied**. Mr. Arnold's motion to intervene, dkt. [47], is **denied**. Mr. Arnold's motion to set hearing, dkt. [48], is **denied**. Mr. Arnold's motion to order defendants to show cause, dkts. [56] and [57], are **denied**.

**IT IS SO ORDERED.**

Date: 11/26/2018

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

KEANDRE ARNOLD
201948
 Psychiatric Unit
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Adam Garth Forrest
BOSTON BEVER KLINGE CROSS & CHIDESTER
aforrest@bbkcc.com